IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DR. EDWARD M. STELLMACHER       ) | |
| ) | |
| Plaintiff,       ) | |
| ) | |
| v.       ) | CIVIL ACTION NO.: |
| ) | 5:08-cv-00481-JEO |
| THE BOARD OF TRUSTEES OF THE       ) | |
| UNIVERSITY OF ALABAMA,       ) | |
| ) | |
| Defendants.       ) | |

**MEMORANDUM OPINION**

This cause comes to be heard on a motion to dismiss filed by the defendants, The Board of Trustees of the University of Alabama (the "Board") and Dr. Allan J. Wilke ("Dr. Wilke") (collectively "Defendants"), pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. (Doc. 5)[1]. The plaintiff, Dr. Edward M. Stellmacher ("Plaintiff"), has filed a response in opposition, in which he requests, in the alternative, leave to amend his complaint. (Doc. 7). Defendants have filed a reply. (Doc. 8). Upon consideration, the court concludes that Defendants' motion to dismiss is due to be granted in part and denied in part and that Plaintiff's motion for leave to amend the complaint is due to be granted.

**I.    LEGAL STANDARDS**

Rule 12(b)(1), FED. R. CIV. P., authorizes a party to move for dismissal based upon a lack of subject-matter jurisdiction. Defendants' motion to dismiss does not rely upon extrinsic evidence and thus constitutes a "facial attack" on the complaint. *See Stalley ex rel. United States v. Orlando Regional Healthcare System, Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (explaining

---

[1] References herein to "Doc.___" are to the document number assigned by the Clerk of the Court in the court file.

the distinction between "facial" and "factual" attacks on subject matter jurisdiction). Such a facial challenge "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232-33 (quoting *McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

Rule 12(b)(6), FED. R. CIV. P., authorizes a party to move for the dismissal of all or part of the allegations of a complaint for failure to state a claim upon which relief can be granted. At the pleading stage, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson,* 355 U.S. 41, 47 (1957)." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964-65 (quotation marks, citations, and brackets omitted). The "plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level . . . .'" *Mills v. Foremost Ins.* Co., 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1964-65). "[N]otice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir.

2007) (internal quotation marks and citations omitted).  "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts v. Florida International Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965).

## II.   THE COMPLAINT

A review of the complaint reveals the following allegations, which are accepted as true for purposes of Defendants' motion:  Plaintiff is a German American, possessing dual citizenship from both the United States and Germany.  (Complaint, Doc. 1, ¶¶ 5 & 8).  He received his certification as a physician from the United States Education Commission for Foreign Medical Graduates in 2003.  (*Id.* at ¶ 9).  Thereafter, he was accepted by the Family Medicine Residency Program (the "Residency Program") at the Huntsville facility of the University of Alabama at Birmingham ("UAB").  (*Id*. at ¶ 10).  He entered the Residency Program, with his contract running from October 1, 2005 to November 4, 2006.  (*Id*. at ¶ 13).

On January 9, 2006, Plaintiff met with his advisor and with defendant Dr. Wilke, the Director of the Residency Program.  (Complaint at ¶ 14).  Dr. Wilke advised that in Plaintiff's most recent review, concerns had been raised about his behavior and that he needed to be evaluated to rule out an underlying mental illness.  (*Id*. at ¶ 15).  Dr. Wilke informed other members of the Residency Program that he had ordered Plaintiff to undergo a psychological evaluation.  (*Id*. at  ¶ 18).  On August 18, 2006, Dr. Wilke sent Plaintiff a memo stating that he was ordering Plaintiff to take a drug test and alleged that Plaintiff had engaged in unprofessional behavior.  (*Id*. at ¶ 22).

Plaintiff alleges that during this period he was suffering from prolapsed hemorrhoids and that he called in sick to work on September 1, 2006, informing the Chief Resident of his medical condition. (Complaint at ¶¶ 23-25). On September 2nd, while heavily medicated due to his condition, Plaintiff missed morning rounds. (*Id*. at ¶ 26). The next day, September 3rd, Plaintiff called the Chief Resident and informed him that his condition had worsened and that he was going to the emergency room at Huntsville Hospital. (*Id*. at ¶ 28). On September 4th, Plaintiff called the Chief Resident to advise that he was still in the emergency room. (*Id*. at ¶ 29). Plaintiff's physician informed Plaintiff that he would need colorectal surgery. (*Id*. at ¶ 30).

On September 6, 2006, Plaintiff met with Dr. Wilke about his medical condition and his attendance problems, whereupon Dr. Wilke suspended Plaintiff. (Complaint at ¶¶ 32-33). On September 10th, Dr. Wilke spoke with the surgeon who was to perform Plaintiff's pending surgery, and Dr. Wilke thereafter notified Plaintiff that he was aware of that scheduled surgery. (*Id*. at ¶ 34). On September 21, 2006, Plaintiff had colorectal surgery. (*Id*. at ¶ 35). On October 10, 2006, Plaintiff was terminated from the UAB residency program. (*Id*. at ¶ 35).

Plaintiff now brings claims against Dr. Wilke and against the Board, which Plaintiff alleges to be "comprised of . . . officials who are responsible for policy and governance of The University of Alabama System, including [UAB]." (Complaint at ¶ 6). Specifically, Plaintiff brings claims alleging that, in "taking the above-described actions," "the defendant" intentionally discriminated against him on the basis of his national origin, German, in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII") (Complaint at "Count One," ¶¶ 37-40) and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (§ 1981) (Complaint at "Count Two," ¶¶ 41-44). Plaintiff also alleges that "the defendant"

4

violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), by allegedly denying him leave to care for his serious health condition and terminating his employment (*see* Complaint at Count Three, ¶¶ 45-47). Plaintiff contends that "the defendant" also violated the FMLA's anti-retaliation provisions by terminating his employment. (*Id.* at Count Four, ¶¶ 48-50). Plaintiff also brings two pendent Alabama state-law claims, for the tort of "outrage" (*id.* at Count Five, ¶¶ 51-53) and invasion of privacy (*id.* at Count Six, ¶¶ 54-56), both of which are brought expressly against both the Board and Dr. Wilke, as well as claims against the Board alone for the negligent hiring, training, supervision, and retention of Dr. Wilke. (*Id*. at Count Seven, ¶¶ 57-58).

## III.   ARGUMENT AND ANALYSIS

### A.   Title VII

#### 1.   Title VII Claims against Dr. Wilke

Title VII prohibits covered employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Dr. Wilke argues that Plaintiff's complaint is due to be dismissed to the extent it purports to assert a Title VII claim against him individually because the complaint fails to allege that he was Plaintiff's "employer" within the meaning of Title VII. The court notes that, insofar as Count One alleges only generically that the "defendant" violated Title VII, the complaint is vague with respect to whether Plaintiff is, in fact, even attempting to assert Title VII claims against both the Board and Dr. Wilke individually. (*See* Complaint at ¶¶ 37, 38, 39; *see also id*. at ¶ 6 ("The Plaintiff was

employed by the Defendant . . . .")).  It appears from Plaintiff's brief in opposition to Defendants' motion, however, that he is unwilling to concede the lack of viability of Title VII claims against Dr. Wilke.  (*See* Plaintiff's Response to Defendants' Motion to Dismiss and Motion for Leave to Amend Complaint (hereinafter "Plaintiff's Response and Motion"), Doc. 7, at 6).

Nonetheless, it is well-established Title VII does not provide a cause of action against individuals who are not themselves the plaintiff's employer under the statute.  *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991).  Plaintiff has not specifically alleged that Dr. Wilke is his employer.  Likewise, Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission, attached to the complaint, lists only the Board as the employer.  (*See* Complaint, Exhibit A).  Further, even if an employment relation were assumed to exist between Plaintiff and Dr. Wilke, Title VII extends only to those employers "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ." 42 U.S.C. § 2000e(b).  *See Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1267-68 (11th Cir. 2001).  While the matter of whether a defendant meets the statutory definition of an "employer" under Title VII is not jurisdictional, it is an "element of a plaintiff's claim for relief." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 509 (2006).  Thus, to bring a claim for an unlawful employment practice under Title VII, a plaintiff must allege that the defendant is an "employer" within the statute.  *Hamm v. Lakeview Community Hosp.*, 950 F. Supp. 330, 332 (M.D. Ala. 1996); *see also EEOC v. Ratliff*, 906 F.2d 1314, 1315 (9th Cir. 1990); *Riggs v. CUNA Mut. Ins. Society*, 171 F. Supp. 2d 1210, 1214 (D. Kan. 2001).  Here, while Plaintiff has alleged that "The

Board meets the jurisdictional prerequisites of TITLE VII," (Complaint, Doc. 1, ¶ 6 (capitalization in original)), no such allegation is made with regard to Dr. Wilke. Because the complaint does not contain sufficient allegations that Dr. Wilke individually is both Plaintiff's employer and covered by Title VII, the court concludes that Defendants' motion to dismiss is due to be granted as it pertains to Title VII claims against Dr. Wilke.

### 2.     Title VII Claims against the Board

Defendants also argue more broadly that the allegations underlying Plaintiff's Title VII claims are deficient under the Rule 12(b)(6) pleading standards articulated by the Supreme Court of the United States in *Twombly* because Plaintiff has ostensibly failed to "show grounds entitling him to relief beyond mere speculation and conclusory allegations." (Motion to Dismiss, Doc. 8, at 2). The court disagrees. Ordinary rules for assessing the sufficiency of a complaint apply to Title VII claims. *Swierkeiwicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270-72 (11th Cir. 2004). The complaint contains a "short and plain statement of the claim," Rule 8(a)(2), FED. R. CIV. P., sufficient to give reasonable notice that Plaintiff is contending that he was subjected to disparate treatment based upon particular enumerated actions allegedly taken against him at specified times because of his national origin, German, including being required to undergo psychological testing, having the fact of such testing publicized to other members of the Residency Program, being required to undergo drug testing, having his employment suspended, and having his employment terminated. As such, Defendants' motion to dismiss is due to be denied insofar as it contends that the complaint fails to plead a sufficient factual predicate to support his Title VII claims.

B.   **42 U.S.C. § 1981**

Section 1981 provides in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).  Defendants argue that all claims under this section are due to be dismissed on the grounds (1) that the Board enjoys immunity under the Eleventh Amendment, (2) that § 1981 does not provide a cause of action against state actors, and (3) that Plaintiff is not within the category of persons protected under the statute.  Plaintiff concedes that these claims are due to be dismissed.  (*See* Plaintiff's Response and Motion, Doc. 7, at 7).  Accordingly, Defendants' motion is due to be granted as to all defendants the § 1981 claims.

C.   **FMLA**

The self-care provision of the FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The Act creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights.  29 U.S.C. §§ 2615(a)(1), 2617(a).  The Eleventh Circuit has recognized that § 2615(a) creates two types of claims: "'interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'"  *Hurlbert v. St. Mary's Health Care*

*System, Inc.*, 439 F.3d 1286, 1993 (11th Cir. 2006) (quoting *Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001)). In Count Three of the complaint, Plaintiff seeks to assert interference claims, while in Count Four, he asserts retaliation claims based upon his termination.

### 1. FMLA Claims against the Board

The Board argues that it is entitled to immunity under the Eleventh Amendment,[2] relying upon *Garrett v. Board of Trustees of Univ. of Ala.*, 193 F.3d 1214 (11th Cir. 1999), reversed in part on other grounds, 531 U.S. 356 (2001), which held that Congress did not validly abrogate state sovereign immunity through the self-care provision of the FMLA. *See* 193 F.3d at 1219. Plaintiff asserts that *Garrett*'s holding has been implicitly overruled by *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003). There, the Supreme Court held that Congress did validly abrogate the states' immunity insofar as it relates to claims based on the *family*-care provision of the FMLA, which entitles an eligible employee to take leave "[i]n order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). *See Hibbs*, 538 U.S. at 725-40.

The court concludes that Plaintiff's FMLA claims against the Board are due to be dismissed based on immunity grounds. This court has no discretion to depart from binding precedent as laid down by the United States Court of Appeals for the Eleventh Circuit. *See Johnson v. DeSoto County Bd. of Commissioners*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996); *Fox v. Acadia State Bank*, 937 F.3d 1566, 1570 (11th Cir. 1991). Again, *Garrett* expressly held that

---

[2]The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State. U.S. Const. amend. XI.

sovereign immunity bars claims brought against the States and their agencies under the self-care provisions of the FMLA. 193 F.3d at 1219. Plaintiff does not dispute either that *Garrett* so held or that such holding, if given effect here, would bar Plaintiff's FMLA claims against the Board, which was also the defendant in *Garrett*. Rather, Plaintiff argues that the Supreme Court's subsequent decision in *Hibbs* has undermined *Garrett* such that the latter need not be followed by this court. The court disagrees.

This court is authorized to depart from an Eleventh Circuit decision based upon an intervening Supreme Court decision only if that decision "'actually overruled or conflicted with it.'" *United States v. Marte*, 356 F.3d 1336, 1344 (11th Cir. 2004) (quoting *In re Provenzano,* 215 F.3d 1233, 1235 (11th Cir. 2000)); *see also United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (recognizing that a decision of the Supreme Court can overrule the decision of the Eleventh Circuit, but the "'Supreme Court decision must be clearly on point'" (quoting *Garrett v. University of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003)). In an unpublished decision, an Eleventh Circuit panel has held that because the holding in *Hibbs* related only to Congress's power to override state sovereign immunity with respect to the family-care provision of the FMLA, the Eleventh Circuit's "holding in *Garrett* that Congress is without authority to abrogate state sovereign immunity for claims arising under the self-care provision of the FMLA remains the law of this Circuit." *Batchelor v. South Florida Water Management Dist.*, 242 Fed. Appx. 652, 653, 2007 WL 2071722, 1 (11th Cir. 2007). While that decision is not binding, the court finds that it is persuasive on the issue of whether *Garrett*'s holding has been implicitly overruled. *See United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 & n.4 (11th Cir. 2004); Eleventh Cir. R. 36-2.

Further, even assuming that this court found that it was free to examine independently the continued viability of *Garrett*'s holding in the wake of *Hibbs*, this court would conclude that *Garrett* is both distinguishable and correctly decided under present law.  The Supreme Court's decision in *Hibbs* is founded upon the proposition that Congress could validly abrogate state sovereign immunity under section 5 of the Fourteenth Amendment with regard to the family-care provision of the FMLA as a prophylactic measure aimed at preventing unlawful sex discrimination by the States.  In so doing, the Court focused exclusively on gender stereotyping that motivated Congress's enactment of the FMLA.  *See, e.g., Hibbs*, 538 U.S. at 730 (describing the pre-existing state leave policies as being attributable to "the pervasive sex-role stereotype that caring for family members is women's work"); *id.* at 783 ("[S]tate practices continue to reinforce the stereotype of women as caregivers.").  Accordingly, the Court's holding rested squarely on the "heightened level of scrutiny" afforded gender discrimination, *id*. at 1982, requiring that congressional remedies be narrowly targeted to alleviate the effects of such discrimination.  *See id*. at 1983 ("The FMLA is narrowly targeted at the fault line between work and family-precisely where sex-based overgeneralization has been and remains strongest.").  However, these same gender-equity concerns simply are not implicated by the self-care provisions of the FMLA, and they cannot, therefore, justify abrogation of sovereign immunity as to the types of claims brought by Plaintiff.  *See Nelson v. University of Texas at Dallas*, 535 F.3d 318, 321 (5th Cir. 2008); *Miles v. Bellfontaine Habilitation Center*, 481 F.3d 1106, 1107 (8th Cir. 2007); *Toeller v. Wisconsin Dep't of Corrections*, 461 F.3d 871, 876-78 (7th Cir. 2006); *Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities*, 422 F.3d 392, 398-405 (6th Cir. 2005); *Brockman v. Wyoming Dep't of Family Services*, 342 F.3d 1159, 1164-65 (10th Cir. 2003).  The

court concludes that Defendants' motion to dismiss is due to be granted on Plaintiff's FMLA claims against the Board.

### 2. FMLA Claims Against Dr. Wilke

Dr. Wilke argues that he is entitled to dismissal of any FMLA claims against him on the ground that the complaint does not contain allegations that he, in his individual capacity, was an employer of the Plaintiff covered by the FMLA. The court agrees.

As it is with the Title VII claims, the complaint is vague with respect to whether Plaintiff is even pursuing FMLA claims against both Defendants (*see* Complaint at ¶¶ 46, 49 ("Defendant's actions were in violation of the FMLA . . . .")), but Plaintiff is unwilling to concede such claims as to Dr. Wilke. (*See* Plaintiff's Response and Motion, Doc. 7, at 8-9)). The court again notes that Plaintiff has not specifically alleged that Dr. Wilke was his employer. Nor has Plaintiff alleged, as he has with regard to the Board, that Dr. Wilke "meets the jurisdictional prerequisites of . . . [the] FMLA." (Complaint, Doc. 1, ¶ 6). In any event, " a public official sued in his or her individual capacity is not an 'employer' under the FMLA," so such a claim is subject to dismissal. *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999).[3] The court concludes that the Defendants' motion is due to be granted as to the FMLA claims against Dr. Wilke.

---

[3]Defendants argue that the failure of a defendant to fit within the statutory definition of an "employer" under the FMLA gives rise to a *jurisdictional* bar. While *Wascura v. Carver* did indeed so hold, *see* 169 F.3d at 685, it is questionable whether such holding has survived the Supreme Court's decision in *Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006), that such a matter is not jurisdictional in a Title VII action but is, rather, simply "element of a plaintiff's claim for relief." *Arbaugh*, 546 U.S. at 509. Indeed, several courts of appeals have held that the jurisdictional characterization of the "employer" definition is no longer sustainable in an FMLA action. *See Minard v. ITC Deltacom Communications, Inc.,* 447 F.3d 352, 356 (5th Cir. 2006) *Hackworth v. Progressive Casualty Ins. Co.*, 468 F.3d 722, 726 n.4 (10th Cir. 2006); *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 548 (6th Cir. 2006). This court need not resolve this "jurisdictional-vs-substantive-element" issue, however, not only because Plaintiff does not contest it, but also because, either way, Plaintiff's claims against Dr. Wilke are subject to dismissal in this context.

### D. State-Law Claims

The Board moves to dismiss Plaintiff's pendent state-law claims against it for the tort of "outrage" (Count Five); invasion of privacy (Count Six), and negligent hiring, training, supervision, and retention (Count Seven). The Board contends that these claims are all precluded based upon state sovereign immunity. Plaintiff has conceded that these claims against the Board are due to be dismissed. (Plaintiff's Response and Motion, Doc. 7 at 9). Accordingly, the Board's motion is due to be granted on these claims.

### E. Plaintiff's Motion for Leave to Amend the Complaint

Because the court concludes that Defendants' motion to dismiss is due to be granted in part, the court will now consider Plaintiff's motion for leave to amend the complaint, which is contained within Plaintiff's response in opposition to Defendants' motion. (*See* Plaintiff's Response and Motion, Doc. 7). A district court must grant a plaintiff at least one opportunity to amend their claims before dismissing them with prejudice, where the plaintiff requests leave to amend and it appears a more carefully drafted complaint might state a claim upon which relief can be granted. *See Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003); *Wagner v. Daewoo Heavy Indust. Amer. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).

The court has some doubt about whether Plaintiff will be able to overcome sovereign immunity or otherwise cure the legal defects deemed to exist in the claims deemed subject to dismissal. Nonetheless, given that the court would in any event be retaining jurisdiction over the Title VII claims against the Board and pendent state-law claims against Dr. Wilke under 28 U.S.C. § 1367(a), the court concludes that it is appropriate to allow Plaintiff an opportunity to

13

amend, as he requests. Accordingly, the court concludes that Plaintiff's motion for leave to amend the complaint is due to be granted.

**IV.   CONCLUSION**

Based on the foregoing, the court concludes that the Defendants' motion to dismiss (Doc. 5) is due to be granted in part and denied in part. The motion is due to be granted with respect to the following claims:

(1)   the Title VII claims against Dr. Wilke;

(2)   the § 1981 claims against both Defendants;

(3)   the FMLA claims against both Defendants; and

(4)   all state-law claims against the Board, which are contained in Counts Five, Six, and Seven.

Defendants' motion is otherwise due to be denied. This would leave the following claims as viable in this action:

(1)   the Title VII claims against the Board,

(2)   the claim for the tort of "outrage" against Dr. Wilke, and

(3)   the claim for invasion of privacy against Dr. Wilke.

The court also concludes that Plaintiff's motion for leave to amend the complaint (Doc. 7) is due to be granted. An appropriate order will be entered.

**DONE**, this 15th day of December, 2008.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge